AUSAs: Ryan Finkel and William Kinder

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **25 MAG 1561** |
| UNITED STATES OF AMERICA | **COMPLAINT** |
| v. | Violations of 26 U.S.C. §§ 5841, 5861(d), and 5871; and 18 U.S.C. § 2 |
| YURI RUBIN, | COUNTY OF OFFENSE: |
| Defendant. | Orange |

SOUTHERN DISTRICT OF NEW YORK, ss.:

     MICHAEL SCOTT, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
### (Unregistered Firearm)

     1.    On or about May 8, 2025, in the Southern District of New York and elsewhere, YURI RUBIN, did knowingly receive and possess a firearm, to wit, an AR-type short barrel rifle .22LR caliber with Hk002165 Importer Umarex manufactured in Arkansas, with barrel measuring approximately 15.25 inches, as defined under Title 26, United States Code, Section 5845(a)(7), and Title 18, United States Code, Section 921(a)(24), not registered to him in the National Firearms Registration and Transfer Record.

     (Title 26, United States Code, Sections 5841, 5861(d), and 5871; and Title 18, United States Code, Section 2).

### COUNT TWO
### (Unregistered Firearm)

     2.    On or about May 8, 2025, in the Southern District of New York and elsewhere, YURI RUBIN, did knowingly receive and possess a firearm, to wit, an AR-type short barrel rifle Model AR-9 PMF, with a receiver manufactured by Moriarti, with barrel measuring approximately 5.5 inches, as defined under Title 26, United States Code, Section 5845(a)(7), and Title 18, United States Code, Section 921(a)(24), not registered to him in the National Firearms Registration and Transfer Record.

     (Title 26, United States Code, Sections 5841, 5861(d), and 5871; and Title 18, United States Code, Section 2).

The bases for my knowledge and for the foregoing charges are, in part, as follows:

     3.    I am a Special Agent with the FBI. I have been a Special Agent with the FBI since approximately March 2024. I am currently assigned to a cyber intrusion squad in FBI's New York

Field Office. I have participated in investigations into criminal offenses. During the course of these investigations, I have participated in the execution of court-authorized legal process, including search warrants involving premises, persons, and electronic devices. I have received firearms training in connection with my position with the FBI.

4. Based on my personal involvement in a judicially authorized search, I have learned the following, among other things:

a. On or about May 8, 2025, I and other law enforcement officers executed a judicially authorized search of a particular residence in the Southern District of New York (the "Residence"). Prior to entering the Residence, I observed YURI RUBIN, the defendant, exit the Residence and transport garbage cans to the curb. At this point, FBI agents approached RUBIN and, subsequently, began a judicially authorized search of the Residence.

b. While conducting the search, a law enforcement officer identified a locked cabinet on the second floor of the Subject Premises in what appeared to be an office.

c. Inside the locked cabinet were several firearms (the "Long Guns") including those pictured below:



d. Based on my training and experience, several of the Long Guns appear to have shortened barrels, which require registration pursuant to the National Firearms Act.

   e. Based on my conversations with an agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), who was present at the Residence on or about May 8, 2025, and who examined the above-pictured firearms, I have learned that two of the firearms are:

    i. an AR-type short barrel rifle .22LR caliber with Hk002165 Importer Umarex manufactured in Arkansas, with barrel measuring approximately 15.25 inches; and

    ii. an AR-type short barrel rifle Model AR-9 PMF, with a receiver manufactured by Moriarti (which is not manufactured in New York), with barrel measuring approximately 5.5 inches.

    iii. The ATF agent further informed me, in substance and in part, that due to the barrel length these two firearms must be registered pursuant to the National Firearms Act.

    iv. Based on my conversations with an ATF agent, I have learned that YURI RUBIN, the defendant, has not registered any firearms with the National Firearms Registration and Transfer Record.

   f. Based on my personal observations, law enforcement officers located the following in the Residence, including in the locked cabinet, among other things: (1) approximately 12 long guns; (2) approximately two handguns (of which the lower receiver had no serial number, meaning they appeared to be privately manufactured guns, (commonly known as "ghost guns")); (3) approximately 15 magazine clips; (4) at least one suppressor (commonly known as a silencer); and (5) at least approximately 1,000 rounds of ammunition.

 5. Based on my personal involvement during an interview of RUBIN, as well as my conversations with another law enforcement officer who interviewed RUBIN, I have learned the following, among other things:

   a. After the above-described firearms were located in the locked cabinet, RUBIN was given his *Miranda* warnings, and RUBIN stated, in substance and in part, that he would speak with law enforcement officers.

   b. RUBIN stated, in substance and in part, that he bought some firearms online. RUBIN was asked, in substance and in part, whether he knew that some components of the firearms found in the Residence were in violation of state or federal law. RUBIN at first denied knowing the firearms were illegal but then stated he was aware New York law was "tighter" than it used to be. RUBIN further stated, in substance and in part, that he was aware that the lower part of the handguns (which refers to the grip section) was a "controlled part." RUBIN was asked, in substance and in part, whether any of the firearms in the Residence were registered. RUBIN neither confirmed nor denied that the firearms were registered  RUBIN was also asked, in substance and in part, whether he had any "paperwork" for the firearms in the Residence In response, RUBIN claimed to have Russian paperwork regarding the suppressor. RUBIN further stated, in substance and in part, that he did not have paperwork regarding the firearms because he had purchased them years ago.

   c. RUBIN was asked, in substance and in part, why he had all the firearms located in the Subject Premises. In response, RUBIN stated, in substance and in part, that he "liked

engineering" and was interested in how firearms worked.  RUBIN denied being a hunter or having an interest in target shooting, although he stated he had done some target shooting in the past.

    WHEREFORE, I respectfully request that a warrant be issued for the arrest of YURI RUBIN, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

/s/ Michael Scott, by SDA with permission
_____
Michael Scott
Special Agent
Federal Bureau of Investigation

Sworn to before me by reliable electronic
means this 8th day of May, 2025.

*[signature: Stewart D. Aaron]*
_____
THE HONORABLE STEWART D. AARON
United States Magistrate Judge
Southern District of New York